**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FR. FABIÁN ARIAS, STEPHEN KELLY, LAURA MCCALLUM, DEBBIE NATHAN, and DR. ZOEY PHILLIPS,<br><br>Plaintiffs,<br><br>-against-<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, in his official capacity as the senior official performing the duties of the Director of U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF JUSTICE; TODD BLANCHE, in his official capacity as Acting Attorney General; GENERAL SERVICES ADMINISTRATION; and EDWARD FORST, in his official capacity as Administrator of General Services,<br><br>Defendants. | No. 26-cv-2130 (CM)<br><br>**PROPOSED PRELIMINARY INJUNCTION** |

**PROPOSED PRELIMINARY INJUNCTION**

**1. Definitions.**

(a) "Immigration Courts" means the New York Federal Plaza Immigration Court at 26 Federal Plaza and the New York Broadway Immigration Court at 290 Broadway, and 201 Varrick Street including public courtrooms, EOIR-controlled public waiting areas, and the public or court-access areas necessary to reach or leave those spaces.

(b) "Ordinary, non-closed hearing" means an immigration-court hearing that has not been lawfully closed and has not been lawfully subjected to an attendance limitation under 8 C.F.R. § 1003.27, 8 C.F.R. § 1240.10(b), any other controlling regulation, a case-specific order, or a lawful capacity, confidentiality, disruption, security, or decorum determination.

(c) "Accessways" means building entrances, screening queues, security checkpoints, elevators, stairs, escalators, lobbies, vestibules, hallways, corridors, courtroom entrances and exits, waiting-room entrances and exits, and other public or EOIR-access routes that members of the public must use to reach, observe, accompany persons to, wait for, or leave ordinary, non-closed immigration-court hearings.

1

(d) "Protected Activities" means public observation of ordinary, non-closed immigration-court hearings; newsgathering; accompaniment; quiet, consensual, noncommercial communication with respondents, family members, or other willing persons; provision or exchange of noncommercial legal-rights, social-service, religious, community-resource, observation-related, accompaniment-related, or pastoral information; and requested emotional, civic, professional, or religious support, so long as the activity does not obstruct access, disrupt a hearing, threaten any person, violate a lawful recording or courtroom-decorum rule, or interfere with a lawful security, arrest, detention, transport, or emergency operation.

## 2. Persons Bound.

This Order binds all Defendants, including U.S. Immigration and Customs Enforcement, their officers, agents, servants, employees, attorneys, successors, contractors, protective security officers, court security personnel, and all other persons who receive actual notice of this Order and act in active concert or participation with any Defendant, including any ICE personnel who direct, request, implement, participate in, or rely on access-control, accessway, courtroom-exclusion, waiting-area, hallway, or enforcement practices restrained by this Order.

## 3. Access to Ordinary, Non-Closed Hearings.

(a) Defendants shall not categorically exclude public observers from ordinary, non-closed hearings at the Immigration Courts, including through blanket "no observers," "no public," "closed courtroom," or materially equivalent directives.

(b) Defendants shall not lock, close, block, or station personnel at courtroom doors, corridors, checkpoints, or other access points in a manner that renders ordinary, non-closed hearings inaccessible to the public, unless the restriction is supported by a lawful, case-specific, and non-pretextual basis, including lawful closure, confidentiality, actual capacity, disruption, security, or decorum.

(c) Defendants shall not deny admission to, remove, or prevent any person from observing an ordinary, non-closed hearing because that person is a member of the public, journalist, clergy member, attorney observer, psychologist, volunteer, family member, accompanier, or support person, or because that person has engaged or intends to engage in Protected Activities.

(d) Defendants shall not require members of the public to obtain advance permission from EOIR personnel, check in with courtroom personnel, identify a personal relationship with a respondent, state a purpose beyond public observation, or secure the consent of a party as a condition of entry into an ordinary, non-closed hearing, except to the extent required by a lawful, case-specific closure, attendance, confidentiality, capacity, security, or decorum determination.

(e) If a courtroom door must remain closed or locked for neutral security, decorum, or operational reasons while ordinary, non-closed hearings are underway, Defendants shall maintain a practical means for a public observer to request entry without materially disrupting the proceeding, such as a clearly identified staff contact, posted instruction, or other procedure that provides practical access in real time.

2

(f) When a person is denied access to or removed from an ordinary, non-closed hearing, Defendants shall, upon request and where practicable without disrupting a proceeding or compromising safety or confidentiality, identify the lawful basis for the restriction.

**4. Accessways and Building-Entry Practices.**

(a) Defendants shall not use, block, reconfigure, close, control, or direct movement in Accessways for purposes unrelated to the regular, lawful operation of the Immigration Courts in a manner that prevents or materially burdens public access to ordinary, non-closed hearings or EOIR-controlled public waiting areas.

(b) Defendants, including ICE personnel and any personnel acting with ICE, shall not use Accessways as staging, holding, exclusion, intimidation, or crowd-control zones, or otherwise conduct or facilitate operations in Accessways, in a manner that prevents public observation of ordinary, non-closed hearings, prohibits Protected Activities, or creates a de facto closure of presumptively open hearings, except to the extent required by a lawful, particularized, and non-pretextual safety, security, emergency, arrest, detention, transport, or court-operational need and only for the time and scope reasonably necessary.

(c) DHS, FPS, GSA, their contractors and protective security officers, and all persons acting in concert with them shall not impose building-entry, screening, hallway, elevator, checkpoint, queuing, or access-control practices that prevent members of the public from reaching ordinary, non-closed hearings without a lawful justification.

(d) No Defendant or person bound by this Order may invoke hallway, accessway, crowd-control, screening, loitering, solicitation, or building-management rules as a pretext to suppress public observation, newsgathering, accompaniment, quiet consensual communication, religious expression, noncommercial information-sharing, or other Protected Activities.

**5. Protected Activities in EOIR-Controlled Public Waiting Areas.**

(a) DOJ, EOIR, and all Defendants or persons acting in concert with them shall not impose any categorical, unreasonable, or viewpoint-discriminatory prohibition on quiet, consensual, noncommercial communication or accompaniment in EOIR-controlled public waiting areas at the Immigration Courts.

(b) This prohibition includes categorical or viewpoint-discriminatory restrictions on quiet conversations, requested accompaniment, explanation of observation or accompaniment, requested pastoral or religious support, emotional support, and noncommercial legal-rights, social-service, religious, community-resource, or court-navigation information shared with willing recipients.

(c) Defendants shall not prohibit a willing person from receiving quiet, consensual, noncommercial assistance or information in an EOIR-controlled public waiting area because the communication concerns immigrants' rights, legal services, social services, public observation, journalism, accompaniment, religious support, church or community resources, or criticism of immigration enforcement or government conduct.

(d) Defendants may enforce reasonable, viewpoint-neutral rules governing congestion, capacity, noise, disruption, safety, decorum, orderly movement, confidentiality, and the lawful distribution of written materials, provided those rules are not applied categorically or selectively to suppress Protected Activities or particular viewpoints.

**6. No Retaliation, Intimidation, or Selective Enforcement Based on Protected Activities.**

(a) Defendants shall not remove, exclude, threaten, intimidate, punish, physically separate, or selectively burden any person in the Immigration Courts or Accessways because that person has engaged, is engaging, or is perceived to be engaging in Protected Activities.

(b) Defendants shall not use threats of removal, threats of arrest, physical force, crowd commands, dispersal orders, hallway-movement directives, access denials, exclusion from waiting areas, or selective enforcement of building rules as a means of suppressing public observation, reporting, accompaniment, religious expression, or quiet consensual noncommercial communication.

(c) Nothing in this paragraph bars Defendants from conducting lawful arrests, detentions, transports, removals, security operations, or emergency responses based on independent lawful grounds and not as retaliation for, or a pretext to suppress, Protected Activities.

**7. No De Facto Full Closure of Presumptively Open Hearings.**

Defendants shall not fully exclude the public from presumptively open immigration-court hearings by locking all practical entrances, denying all observers, instructing staff categorically to refuse observers, refusing to provide any practical means of real-time entry, or using Accessways or security practices to make ordinary, non-closed hearings inaccessible in practice, unless a lawful closure or attendance limitation has been imposed for that hearing.

**8. Preserved Government Authority and Neutral Rules.**

Nothing in this Order shall be construed to:

(a) require admission to a hearing that has been lawfully closed or lawfully subjected to an attendance limitation;

(b) prevent enforcement of lawful confidentiality protections, capacity limits, courtroom-decorum rules, recording restrictions, device restrictions, safety rules, ordinary building-security screening, neutral crowd-control measures, or emergency measures;

(c) grant access to nonpublic spaces, restricted offices, secure areas, detention areas, holding areas, judges' chambers, staff-only corridors, or other areas not open to the public;

(d) authorize obstruction of corridors, entrances, exits, elevators, stairways, security checkpoints, waiting areas, or courtroom operations;

(e) authorize harassment, threats, coercion, disruption, solicitation prohibited by lawful rule, or communication with any person who does not consent;

(f) prohibit lawful arrest, detention, transport, removal, or related enforcement operations based on independent lawful grounds; or

4

(g) limit an immigration judge's lawful authority to regulate proceedings, protect confidentiality, maintain decorum, address disruption, or impose case-specific restrictions authorized by controlling law.

**9. Implementation and Notice.**

(a) Within two business days after entry of this Order, Defendants shall distribute a copy of this Order to the Assistant Chief Immigration Judges for the Immigration Courts, courtroom staff with responsibility for public access, DHS/FPS personnel responsible for building entry and access control, GSA personnel responsible for building management, protective security officers assigned to the relevant buildings, and ICE personnel assigned to or regularly operating in the Immigration Courts or Accessways.

(b) Within three business days after entry of this Order, Defendants shall issue written instructions sufficient to ensure that the personnel identified in paragraph 9(a) understand that ordinary, non-closed hearings remain open to public observers; that categorical no-observer and no-public practices are prohibited; that quiet, consensual, noncommercial communication and accompaniment in EOIR-controlled public waiting areas may not be categorically or viewpoint-discriminatorily prohibited; and that Accessways may not be used to prevent public access to presumptively open hearings or to suppress Protected Activities.

(c) Within seven days after entry of this Order, Defendants shall file a notice certifying that the distribution and written-instruction requirements in paragraphs 9(a) and 9(b) have been completed, identifying by role the categories of personnel who received the Order and instructions.

(d) For the duration of this Order, Defendants shall preserve records sufficient to identify any incident in which a member of the public is denied entry to, removed from, or prevented from reaching an ordinary, non-closed hearing, including the date, approximate time, location, and stated basis for the restriction, to the extent such information is created or maintained in the ordinary course or in implementing this Order.

**10. Duration and Jurisdiction.**

This Order shall remain in effect until further order of the Court. The Court retains jurisdiction to interpret, enforce, modify, or dissolve this Order.