**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FR. FABIÁN ARIAS, STEPHEN KELLY,                    26-cv-2130 (CM)
LAURA MCCALLUM, DEBBIE NATHAN,
DR. ZOEY PHILLIPS,                                  **DECLARATION OF**
                                                    **BARBARA BOWEN**

    *Plaintiffs,*

    -against-

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
DAVID J. VENTURELLA, in his official capacity as the
senior official performing the duties of the Director of
U.S. Immigration and Customs Enforcement;

U.S. DEPARTMENT OF HOMELAND SECURITY;
MARKWAYNE MULLIN, in his official capacity as Secretary
of Homeland Security;

U.S. DEPARTMENT OF JUSTICE; TODD BLANCHE, in his
official
capacity as Acting Attorney General;

GENERAL SERVICES ADMINISTRATION; and EDWARD
FORST, in his
official capacity as Administrator of General Services,

    *Defendants.*

---

## DECLARATION OF BARBARA BOWEN

I, Barbara Bowen, declare as follows:

1. I am a CUNY professor. I have personal knowledge of the matters stated in this declaration, and if called as a witness I could and would testify competently to them.

2. I became involved in courthouse accompaniment work after coming together with other concerned people and with my union. I also participated in many know-your-rights trainings, which included training in non-interference with ICE.

- 1 -

3. I began going to immigration courthouses on or about May 23, 2025, after hearing that people were being picked up for detention immediately after their court hearings.

4. Since then, I have gone to the courthouses at least once a week, except for five or six holiday weeks. I estimate that I have gone at least 50 times. I intend to continue doing this work.

5. In the course of this work, I have observed ICE officers at immigration courthouses, including Federal Plaza and 290 Broadway.

6. I can distinguish ICE officers from court security officers and other courthouse personnel. They are very different and clearly distinguishable. At times, especially on the first floor of Federal Plaza near the check-in point, I have seen people wearing ERO or other identifying vests. Some officers have had "ICE" written on their vests or other clothing.

7. I have often observed ICE officers whose faces are largely covered and whose badges are not visible. In many instances, I could see only their eyes because their masks were pulled up and their caps were pulled down.

8. Before the court restricted hallway arrests, I frequently saw approximately 10 to 12 ICE officers standing in the hallways as respondents made their way to their assigned courtroom or waiting room. The officers often stood with their arms crossed and with a forbidding posture.

9. The ICE officers I observed were often not wearing formal uniforms. They commonly wore cargo pants, jeans, baseball caps, and other non-uniform clothing. They moved from hallway to hallway and sometimes clustered outside particular courtrooms.

10. I observed that the presence of ICE officers in the courthouse created a terrifying experience for respondents. Respondents had to walk a gauntlet past ICE officers simply to get into court. I witnessed one woman waiting for a relative in a waiting room who needed to rush to the restroom to vomit from fear. I have had a woman collapse in my arms, literally unable to hold herself up.

11. Although the ICE officers' presence typically did not physically prevent a person from entering court, I believe it created a significant psychological and emotional barrier for people facing important court dates. In my view, and based on many conversations with respondents, it inhibited people's ability to access the court freely and openly.

12. I have seen ICE officers holding photocopied papers while waiting outside courtrooms. In the earlier months of this practice, those papers appeared to identify particular people. I could sometimes see what appeared to be a grainy photocopied photograph of a person on the paper.

13. I recall one incident at Federal Plaza involving a man who did not want to leave the courtroom because he believed ICE officers were waiting for him outside. The ICE officers were in fact outside the courtroom.

14. The man was by himself. He could see outside the courtroom door that ICE officers were waiting. This occurred during a period when cases were being dismissed and people were then detained after leaving court.

15. The man said he was not going to come out of the courtroom. I was present as an observer.

16. The judge told the ICE officers that they could not come into the courtroom. There was back and forth between the judge and the officers, with the judge saying the officers could not come in and the officers saying that the man had to come out.

17. The judge did not initially allow the ICE officers into the courtroom. Eventually, the judge cleared the courtroom. I believe that clearing the courtroom allowed the officers to come in. The man was then detained.

18. To make sure I understood the rules, I have read extensively, spoken with immigration lawyers, attended approximately 10 to 12 know-your-rights trainings, participated in webinars, and read the relevant regulations carefully.

19. I have seen many detentions at the courthouses. I have seen people treated brutally, including being grabbed and pushed.

20. I was personally pushed by an ICE officer at 290 Broadway. This occurred in or around early June 2025.

21. The incident took place in a narrow hallway or corridor at 290 Broadway. I had been sitting with a respondent in court as an observer.

22. My conduct during courthouse accompaniment has always been non-interference. Everything I have done, and everything my union has done in this work, has been based on non-interference and lawful conduct. I was simply near enough to be shoved.

23. I have also told other people involved in this work that our practice is not to interfere with ICE. We do not try to pull anyone away from ICE officers or physically prevent ICE officers from acting. We do not initiate contact with ICE officers.

- 4 -

- 5 -

24. Based on my observations, ICE officers' conduct in the courthouse hallways and areas outside courtrooms has created fear and intimidation for respondents and others present in the courthouse.

25. The ICE officers' face coverings, lack of visible badges, non-uniform clothing, clustering outside courtrooms, and presence in large numbers all contribute to an intimidating atmosphere.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 2, 2026 in New York, New York

/s/ Barbara Bowman

Babara Bowman