**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| FR. FABIAN ARIAS *et al.*, |
| Plaintiffs, |
| v. |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT *et al.*, |
| Defendants. |

No. 26 Civ. 2130-CM

## DECLARATION OF LEGAL ADMINISTRATIVE SPECIALIST YASAR ALI

I, Yasar Ali, submit this declaration pursuant to 28 U.S.C. § 1746, and declare under penalty of perjury as follows:

1.      I am a Legal Administrative Specialist at the New York – Federal Plaza Immigration Court, located at 26 Federal Plaza, 12th Floor, Room 1237, New York, NY 10278, which is within the Executive Office for Immigration Review ("EOIR") in the U.S. Department of Justice ("DOJ"). I was assigned to support Immigration Judge ("IJ") Christopher Cusmano during his group master calendar session on June 25, 2026.

2.      This declaration is based on my personal knowledge and information made available to me in the course of performing my official duties.

3.      The purpose of this declaration is to address the allegations contained in the July 4, 2026, Affidavit of Rev. Juan Carlos Ruiz (ECF No. 74), in which Rev. Ruiz describes an incident on June 25, 2026, where he was purportedly removed from an immigration hearing at the 26 Federal Plaza Immigration Court.

4.      I was present at the master hearing session on June 25 in IJ Cusmano's courtroom that Rev. Ruiz discusses in his affidavit.

5.      After the master hearings started that day, I saw Rev. Ruiz pace back and forth outside the courtroom door, while I was sitting at my desk in the courtroom (since the courtroom door was open). I do not recall Rev. Ruiz wearing a clerical collar; instead, I remember seeing him in a suit and regular button-up shirt. I did not know he was a member of the clergy. I approached and asked if I could help; he pointed to a female respondent, from which I understood that he was accompanying her. Rev. Ruiz identified himself as an observer, not a priest.

6.      During the master hearing session, Rev. Ruiz sat on the bench next to the female respondent. At one point, IJ Cusmano asked one of the *pro se* male respondents if he wished to voluntarily depart from the United States. The male respondent informed the IJ that he intended to marry his U.S. citizen female partner and that they had just had a baby, born in May 2026. The male respondent explained that he and his partner had a marriage license but were not yet married. His partner was waiting outside in the waiting area. The male respondent asked for additional time to marry and to pursue a marriage-based petition. However, IJ Cusmano determined that, because the male respondent's proceedings had been pending for over two years, the respondent was ineligible for adjustment of status and would therefore have to undergo consular process for any immigrant visa, regardless of a marriage. IJ Cusmano then again offered him the option of voluntary departure. The male respondent indicated he wished to first consult with his partner. IJ Cusmano ordered a recess to afford the male respondent an opportunity to discuss the decision with his partner.

7.      After the break, the male respondent requested additional time to consult with a lawyer before making a decision. IJ Cusmano granted the request and adjourned the case to July 15, 2026.

8. During the master hearing session, Rev. Ruiz was taking notes and sitting next to the female respondent. I did not prohibit Rev. Ruiz or any other observers from taking notes. At the conclusion of the male respondent's hearing, I escorted the male respondent out of the courtroom so he could meet his partner in the waiting room. As we passed Rev. Ruiz (still in the courtroom), he whispered to the male respondent, trying to start a discussion with him, and handed him a piece of paper that appeared to be a flyer, while other master hearings were ongoing. Since other master hearings were proceeding, I considered Rev. Ruiz's communication with the male respondent to be disruptive and determined it could potentially interfere with the digital audio recording, which can pick up background noise. I therefore told Rev. Ruiz that he may not disrupt the ongoing hearings, including by distributing flyers in the courtroom, and asked him to step outside to speak with me. Outside the courtroom, I told Rev. Ruiz that he could continue his conversation with the male respondent in the waiting area and that he could also hand out flyers in the waiting area. Rev. Ruiz was not confrontational and obliged. He resumed his conversation and activities with the male respondent in the waiting area. I did not have any further conversations with Rev. Ruiz.

9. Neither IJ Cusmano nor I "ordered" Rev. Ruiz to leave the courtroom. However, because I felt his discussion with the male respondent and attempt to distribute a flyer or piece of paper to the male respondent in the courtroom, was disruptive, I did ask him to take his conversation and resume his activities in the waiting area, especially since other master hearings were still proceeding.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this <u>15th</u> day of July 2026.

Yasar Ali
Legal Administrative Specialist
New York Immigration Court
26 Federal Plaza

4