**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FR. FABIÁN ARIAS et al.,

Plaintiffs,

-against-

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT et al.,

Defendants.

No. 26 Civ. 2130 (CM)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO ADD REVEREND JUAN CARLOS RUIZ AS A NAMED
PLAINTIFF AND FOR LEAVE TO FILE THE PROPOSED
SECOND AMENDED COMPLAINT**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2679/2728/2525

JEAN-DAVID BARNEA
KATHLEEN M. LEWIS
ILAN STEIN
Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .....................................................................................................................2

    A.  The Initial Complaint and Motion for Preliminary Injunction ...........................................2

    B.  Plaintiffs' Second Amended Complaint ..............................................................................6

ARGUMENT ..........................................................................................................................7

    I.      The Court Should Reject Plaintiffs' Second Amended Complaint as an Improper Pleading.........................................................................................................7

    II.     Plaintiffs' Proposed New Claims Should Be Rejected as Futile .................................9

        A.  Standard of Review..................................................................................................9

        B.  The Second Amended Complaint Fails to State a Claim Against ICE....................9

        C.  The Second Amended Complaint Fails to State a Claim with Respect to Security Screenings at the Federal Buildings at Issue..........................................................12

        D.  The Second Amended Complaint Fails to State a Claim with Respect to Hybrid and Virtual Immigration Cout Hearings .................................................................15

CONCLUSION.......................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Harte v. City of New Rochelle*,
No. 24 Civ. 4994 (NSR), 2026 WL 243819 (S.D.N.Y. Jan. 29, 2026) ...................................... 7

*Hoffman v. Ighodaro*,
No. 16 Civ. 0155 (LAK) (JCF), 2016 WL 7494879 (S.D.N.Y. Dec. 29, 2016)......................... 7

*Hotel Employees & Restaurant Employees Union v. City of NY Dep't of Parks & Recreation*,
311 F.3d 534 (2d Cir. 2002) ................................................................................................ 14

*Joe Hand Productions v. Conroy*,
167 F. Supp. 2d 536 (N.D.N.Y. 2001)................................................................................... 12

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) .................................................................................................. 9

*Moore v. Hadestown Broadway LLC*,
722 F. Supp. 3d 229 (S.D.N.Y. 2024) .................................................................................... 9

*Sec. of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984)............................................................................................................. 12

*Smith v. Hogan*,
794 F.3d 249 (2d Cir. 2015) .................................................................................................. 7

*Tannerite Sports, LLC v. NBCUniversal News Group*,
864 F.3d 236 (2d Cir. 2017) .................................................................................................. 9

**Rules**

Federal Rule of Civil Procedure 8(a) ............................................................................................ 7

Federal Rule of Civil Procedure 15(a) .......................................................................................... 9

Defendants U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella, the senior official performing the duties of the Director of ICE, in his official capacity; the U.S. Department of Homeland Security ("DHS"); Markwayne Mullin, the Secretary of Homeland Security, in his official capacity; the U.S. Department of Justice ("DOJ"); Todd Blanche, the Acting Attorney General, in his official capacity; the General Services Administration ("GSA"); and Ed Forst, the Administrator for the GSA, in his official capacity (collectively, the "Government"), by their attorney, James M. McDonald, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to Plaintiffs' motion to add Reverend Juan Carlos Ruiz as a named plaintiff and for leave to file a proposed Second Amended Complaint. ECF No. 102.

## PRELIMINARY STATEMENT

While an improvement on Plaintiffs' prior attempt to craft a second amended complaint—which the Court struck—the current version still falls short. It includes mostly conclusory statements rather than factual allegations, improperly draws on numerous referenced declarations and affidavits (many of which are from non-plaintiffs), purports to incorporate by reference allegations in previous complaints, and includes improper legal argument.

Even if the Court were to overlook these formal defects, the new and additional claims Plaintiffs seek to add in this pleading are futile in that they could not survive a motion to dismiss. Plaintiffs' new claim against ICE suffers from the same faults as the claim the Court already dismissed: it would find fault in the incidental effect of ICE enforcement operations on visitors to immigration court and does not identify any instances in which ICE agents purposely and directly interfered with visitors' rights. Plaintiffs would also seek to hold ICE accountable for the subjective feelings that immigration respondents and others experience when they see ICE agents

near immigration court spaces, but the Court made clear that this cannot give rise to a valid cause of action.

Plaintiffs' claim regarding security screening at the entrances to the two federal buildings at issue fares no better. None of the Plaintiffs alleges that they themselves have experienced any problems entering the buildings to go to immigration court. Their only allegations in this regard are their nearly detail-free descriptions of observing other people in the security line. This cannot support a claim. The importance of security screenings in federal buildings is obvious, and the new pleading gives no reason to believe that visitors to immigration courts are treated differently from any other visitors to these buildings.

Finally, Plaintiffs complain about the Executive Office for Immigration Review's ("EOIR") recent clarification of its guidelines on public access to immigration court hearings that are held virtually or in a hybrid format. EOIR has specified that public observers may participate in fully virtual hearings remotely (subject to capacity limits), but when hearings are held in courtrooms with only some parties participating remotely, observers must be physically present in the courtroom. Plaintiffs identify no constitutional problem with this arrangement.

The Court should thus deny Plaintiffs' motion to further amend their complaint.

## BACKGROUND

### A.  The Initial Complaint and Motion for Preliminary Injunction

On March 17, 2026, Plaintiffs filed their initial complaint in this case. ECF No. 2. They filed a first amended complaint on April 29, 2026. ECF No. 40. The first amended complaint sought relief for the allegedly improper closures of hearings at two immigration courts in Lower Manhattan to public observers without justification, *see, e.g.*, *id.* ¶¶ 50-54, 89-90, 103-06; and for actions of building and courtroom staff that allegedly interfered with the ability of observers to speak and voluntarily exchange information with immigration respondents outside courtrooms,

*see, e.g.*, *id.* ¶¶ 26-32, 66-69, 72-74, 86-88.  Plaintiffs' claims were largely framed as being against all named defendants generally, rather than distinguishing between the operations of EOIR, the DOJ branch that operates the immigration courts; the Federal Protective Service ("FPS"), the part of DHS that provides security in federal buildings; GSA, which oversees the operation of federal buildings; and ICE, which is the agency responsible for immigration enforcement.  *E.g.*, *id.* ¶¶ 104, 107, 111, 113, 116.  Plaintiffs also moved for a preliminary injunction, ECF No. 32, and for class certification, ECF No. 33.  Accompanying Plaintiffs' filings were declarations from each of the named plaintiffs, which largely reiterated the factual allegations in the complaint.  ECF Nos. 34-37, 41.

On May 12, 2026, the Government moved to dismiss Plaintiffs' complaint and to oppose a preliminary injunction.  ECF No. 44.  The Government argued, among other things, that Plaintiffs lacked standing to obtain injunctive relief, *id.* at 13-17, that a class should not be certified, *id.* at 26-31, and that certain agencies' voluntary actions to clarify and reinforce existing rules render it unlikely that Plaintiffs will suffer irreparable harm, and thus that injunctive relief is unnecessary, *id.* at 32-34.  The Government also noted that ICE is not responsible for building security, but it sometimes conducts operations outside immigration courtrooms.  *Id.* at 7; Declaration of Joseph Harrington (ECF No. 50) ¶¶ 7-9.

In an order dated June 22, 2026, the Court granted the Government's motion to dismiss in part and denied it in part, denied class certification, and decided that preliminary injunctive relief was appropriate.  ECF No. 62.  The Court dismissed the claims against ICE (and its director) because Plaintiffs had not alleged that ICE officers or employees "prohibited [any] named plaintiff from observing a hearing, speaking with a respondent, distributing information, or remaining in a public area outside the course of an arrest, detention, transport, or other enforcement operation."

*Id.* at 34.  The Court made clear that "Plaintiffs do not have the right to interfere with lawful arrests that are being carried out by . . . ICE agents[]—even to provide pastoral support or engage in otherwise protected communication."  *Id.*  The Court further noted that "Plaintiffs' alleged fear or intimidation arising from the visible presence of ICE officers and from witnessing arrest operations does not, without additional facts, establish a threatened injury that could be redressed by an injunction directed at ICE," because "[t]he Court cannot enjoin lawful enforcement activity merely because its occurrence makes observers or accompaniers uncomfortable or deters them from attending court."  *Id.*  The Court afforded Plaintiffs an opportunity to replead their claims against ICE.  *Id.* at 35.

The Court also dismissed Plaintiffs' broad allegations regarding "exterior spaces."  *Id.*  at 63.  As the Court explained, "generalized references to 'exterior spaces' do not distinguish municipal sidewalks from federal plazas, entrances, setbacks, driveways, or security-controlled areas—properties that may serve different functions and carry different forum classifications.  Nor does the amended complaint identify which named plaintiff engaged in what protected activity at a particular exterior location, which defendant restricted that activity, or what restriction was imposed."  *Id.*  The Court invited Plaintiffs to replead their claims relating to exterior spaces, only if they can identify "(1) the specific exterior location at issue and facts bearing on its function and forum classification; (2) the named plaintiff who engaged or intends to engage in protected activity there; (3) the nature of that activity; (4) the defendant or personnel responsible for the challenged restriction; (5) the restriction imposed and facts supporting its alleged unreasonableness or viewpoint-discriminatory character; and, because plaintiffs seek prospective relief, (6) a real and immediate threat that the named plaintiff will encounter the challenged restriction again."  *Id.*

4

The Court asked the parties to submit proposed preliminary injunction orders and related materials. *Id.* at 94-96. Among other things, Plaintiffs' proposed preliminary injunction order improperly included relief against ICE and failed to differentiate between the defendant agencies. ECF No. 63. Plaintiffs' proposed order was accompanied by a memorandum of law and numerous declarations (from persons other than the named plaintiffs)—but no new pleadings—arguing that preliminary injunctive relief against ICE was appropriate. ECF Nos. 64-72. In response (as relevant here), the Government objected to the inclusion of ICE in the injunction because the Court had dismissed Plaintiffs' claims against that agency, and also objected to Plaintiffs' failure to tailor the relief they sought by agency. ECF No. 82 at 3-6, 9-11. The Government also provided formal memoranda from senior EOIR and FPS officials setting out the relevant longstanding agency rules and the agencies' renewed commitments to enforce them evenhandedly. ECF No. 83. Among other things, EOIR's memorandum reiterated procedures for public access to immigration court hearings and clarified the rules for public access to virtual and hybrid hearings. ECF No. 83-2 at 3-4. The Court entered a preliminary injunction that set forth agency-specific limitations that required the agencies—not including ICE—to abide by their preexisting rules on access to immigration court hearings and to adjoining spaces without regard to the purpose of the visit. ECF No. 87.

Plaintiffs also moved to substitute a new named plaintiff—Rev. Ruiz—in place of existing named plaintiff (and counsel for Plaintiffs) Stephen Kelly, attaching an affidavit from Rev. Ruiz but no amended pleading. ECF Nos. 73-75. The Government opposed the motion because Local Civil Rule 15.1 requires a proposed pleading for a motion to add a plaintiff. ECF No. 81. The Court agreed with the Government and denied Plaintiffs' motion on that basis, without prejudice to the submission of a proper motion accompanied by a pleading. ECF No. 86.

5

### B. Plaintiffs' Second Amended Complaint

Plaintiffs then filed a document captioned as a second amended complaint, accompanied by several new declarations and affidavits. ECF No. 88-95. But, as explained in the Government's opposition letter, the document was not a pleading at all, but rather a memorandum of law arguing that factual assertions contained in various declarations submitted over the course of this litigation overcame the faults that the Court identified in Plaintiffs' claim against ICE. ECF No. 96. The Court agreed with the Government and struck Plaintiffs' filing from the docket. ECF No. 104.

Plaintiffs then filed the instant motion, ECF No. 102, along with a (second) proposed second amended complaint, ECF No. 103-1 ("SAC"). This proposed pleading contains relatively few factual allegations. Instead, it (still) includes a fair amount of legal argument, and relies on (and cites) Plaintiffs' operative (first amended) complaint and many of the declarations and affidavits that Plaintiffs have filed over the course of the litigation (mostly not from the named plaintiffs) in lieu of making factual allegations. The focus of the new pleading is almost exclusively on new issues; the allegations that led the Court to grant a preliminary injunction have all been deleted, *see* ECF No. 103-2 (redline), and the issues therein are now addressed only in the form of a list of "challenged practices" rather than factual allegations actually challenging those supposed practices, *e.g.*, SAC ¶¶ 43-54. The proposed complaint instead discusses at length three new topics: (1) Plaintiffs' claims against ICE, *id.* ¶¶ 59-71; (2) Plaintiffs' claims relating to the operation of building perimeter security, as concerns public access to the federal buildings in which the immigration courts at issue are located (the "exterior access areas"), *id.* ¶¶ 72-85, 94-96; and (3) Plaintiffs' concerns with EOIR's new rules on virtual and hybrid hearings, *id.* ¶¶ 86-90, 97.

## ARGUMENT

### I.      The Court Should Reject Plaintiffs' Second Amended Complaint as an Improper Pleading

Plaintiffs' second attempt at drafting a Second Amended Complaint, though better than their first attempt, does not clear the hurdle for a proper pleading for several reasons. First, a complaint that relies principally on affidavits and declarations rather than making factual allegations violates the requirement in Federal Rule of Civil Procedure 8(a) that a pleading contain a short and plain statement of relief. *See Smith v. Hogan*, 794 F.3d 249, 254-55 (2d Cir. 2015) (declining to treat plaintiff's affidavit attached to complaint as part of the complaint).

Even if Plaintiffs could rely so extensively on extraneous material to support their latest claims, much of the material they cite is extraneous for another reason: the declarations and affidavits they cite are almost entirely from persons other than the named plaintiffs. The proposed second amended complaint thus improperly relies extensively on the statements of persons who are not named plaintiffs (or in the case of Rev. Ruiz, a proposed named plaintiff).[1] While Plaintiffs apparently still intend to seek class certification at some point, *see* SAC ¶¶ 122-23, no class has been certified to date, and the allegations of the named plaintiffs must thus form a basis for relief at this juncture. While declarations of putative class members may be relevant to a subsequent motion for class certification, *see Hoffman v. Ighodaro*, No. 16 Civ. 0155 (LAK) (JCF), 2016 WL 7494879, at *2 (S.D.N.Y. Dec. 29, 2016), they are not a substitute for allegations by the named Plaintiffs themselves to establish their own claims in the first instance.

Similarly, it is improper for an amended complaint to incorporate by reference allegations from earlier pleadings; a proper complaint "must stand on its own." *Harte v. City of New Rochelle*,

---

[1] The Government does not oppose the motion to add Rev. Ruiz as a named plaintiff, but objects to factual allegations attributed to him being spread across at least three separate declarations. *See* ECF Nos. 74, 90, 103-3; *see also* SAC ¶¶ 61, 76-78.

No. 24 Civ. 4994 (NSR), 2026 WL 243819, at *1 (S.D.N.Y. Jan. 29, 2026) ("Any amended pleading must stand on its own and may not incorporate prior complaints by reference. . . . This means that the Second Amended Complaint completely replaces and supersedes the Amend[ed] Compl[aint] as well as the original Complaint filed by Plaintiff. Upon the filing of the Second Amended Complaint, all preceding complaints are regarded as non-existent." (citation omitted)). Here, Plaintiffs' new proposed pleading has deleted the factual allegations that formed the basis for the preliminary injunction this Court has already entered, while focusing entirely on three new areas. If Plaintiffs wish to abandon their original claims—admittedly an unlikely proposition— the Court should vacate its preliminary injunction accordingly. But Plaintiffs' preexisting claims cannot survive solely through the fact-less and conclusory list of "challenged practices" that they currently occupy. SAC ¶¶ 43-54.

Finally, the proposed pleading still includes legal argumentation, even though the Court struck Plaintiffs' previous proposed second amended complaint because it was essentially a memorandum of law rather than a pleading. ECF No. 104. The current version is only somewhat better in that regard. It still contains headings in the form of legal conclusions (*e.g.*, "Plaintiffs Have Article III Standing to Seek Relief Against ICE," SAC at 11), and a discussion of applicable case law, *e.g.*, *id.* ¶¶ 36-38, 56-58. These legal arguments may belong in a memorandum of law, but not in a pleading.

The Court should thus strike Plaintiffs' latest pleading and give them one final chance to submit a proper pleading that sets forth, in a single document (without incorporating allegations in affidavits, declarations or prior pleadings), all non-conclusory factual allegations that relate to their own injuries and that give rise to all of their claims in this case and a plain statement of those claims. The Government also respectfully proposes that, to the extent Plaintiffs describe particular

8

incidents in or around immigration courts giving rise to their claims, the Court should direct them to include as much detail as possible regarding those incidents in their pleading—such as exact dates and locations, the names of respondents or immigration judges, and the names or agency affiliations of any federal employees or contractors if known—to enable the Government to respond precisely to the allegations and the Court to evaluate them.[2]

## II.    Plaintiffs' Proposed New Claims Should Be Rejected as Futile

### A.  Standard of Review

The Court has "discretion to decide whether to grant or deny leave to amend a complaint under Federal Rule of Civil Procedure 15(a)." *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 263 (S.D.N.Y. 2024) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  While this "rule is permissive and courts often grant plaintiffs leave to amend freely, proposed amendments must be denied if they are futile." *Id.* (citing *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 252 (2d Cir. 2017) (some citations omitted)). "Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under [Federal] Rule [of Civil Procedure] 12(b)(6).'" *Id.* (quoting *Tannerite Sports, LLC*, 864 F.3d at 252) (some citations and alterations omitted)).

### B.  The Second Amended Complaint Fails to State a Claim Against ICE

Amendment would be futile with respect to Plaintiffs' claims against ICE because Plaintiffs have again failed to identify instances in which ICE personnel specifically prevented a named plaintiff from observing an open immigration court hearing, or engaging in quiet

---

[2] Relatedly, the Court should also direct Plaintiffs to indicate whether any GSA personnel has been involved in any of the incidents giving rise to their claims, as the only allegations naming that agency are entirely conclusory.  *See* SAC ¶ 104 ("DHS, FPS, protective security officers, and GSA have denied or materially burdened access through arbitrary or selectively enforced entry, hallway, waiting-area, and exterior practices.").

communication or providing pastoral support with an immigration respondent in a way that does

not interfere with enforcement operations.  *See* ECF No. 62 at 34.  As the Court explained in

dismissing Plaintiffs' original claims against ICE, "Plaintiffs do not have the right to interfere with

lawful arrests that are being carried out by authorized officials . . . even to provide pastoral support

or engage in otherwise protected communication."  *Id.*  Moreover, the Court "cannot enjoin lawful

enforcement activity merely because its occurrence makes observers or accompaniers

uncomfortable or deters them from attending court."  *Id.*  Plaintiffs' allegations fail to overcome

these hurdles.

Plaintiffs first assert that they have identified ICE personnel with sufficient specificity, *see*

SAC ¶¶ 59-64, in response to the Court's prior observation that the First Amended Complaint

"repeatedly refer[red] collectively to 'federal agents,' 'federal police,' 'security personnel,' or

'Defendants,' without identifying which agency employed the person who allegedly imposed a

particular restriction," ECF No. 62 at 33-34.  But even if Plaintiffs have clarified which incidents

they believe involved ICE agents, as opposed to employees of other agencies, those incidents do

not support a valid claim against ICE.

A few of the allegations focus on the allegedly disruptive effect of ICE enforcement

operations on Plaintiffs' attempts to accompany immigration respondents to court.  For example,

Plaintiff Stephen Kelly believes it was ICE agents who "conduct[ed] a post-hearing immigration

seizure [that] physically ended [his] quiet explanation" to a respondent after a hearing.  SAC ¶ 60.[3]

But as the Court previously explained, this allegation "do[es] not identify an instance in which

---

[3] Kelly has moved to withdraw as a named plaintiff in this case.  ECF Nos. 105-08.  The Government consents to this withdrawal.  As a result of the proposed withdrawal, however, the Court should not consider Kelly's allegations, including this one, when it assesses whether Plaintiffs advance viable claims against ICE or any other agency.

ICE personnel, *apart from carrying out or securing an enforcement operation*, prohibited a named plaintiff from observing an open hearing, engaging in quiet communication, providing pastoral support, distributing information, or remaining in a publicly accessible area."  ECF No. 62 at 34 (emphasis added).  Similarly, Rev. Ruiz, whom Plaintiffs seek to add as a named plaintiff, alleges that ICE officers pushed him, threatened him with arrest, and ended his pastoral counseling of an immigration respondent on January 6, 2026.  SAC ¶ 61; *see also* ECF No. 74 ¶ 25.  While this incident may have prevented Rev. Ruiz from counseling the respondent, it is apparent from his description that the officers were carrying out an arrest—even if Rev. Ruiz believed they were seeking to detain the wrong person.  ECF No. 74 ¶ 25.  As the Court previously concluded, Plaintiffs cannot interfere with ICE arrests, even to provide pastoral counseling or support.  ECF No. 62 at 34.

Plaintiffs' other allegations against ICE fall under the category of ICE "enforcement activity . . . [whose] occurrence makes observers or accompaniers uncomfortable or deters them from attending court," which the Court has also already concluded it cannot enjoin.  ECF No. 62 at 34.  For example, Plaintiff Debbie Nathan alleges that on June 25, 2026, ICE agents "aggressively confronted" her while she was photographing a public hallway in immigration court.  SAC ¶ 68.  Nathan describes how "[o]fficers from another DHS component"—likely FPS officers or Protective Security Officers, from context—intervened and informed the ICE agents that she could take pictures in the hallway.  *Id.*  While Nathan alleges that the ICE agents "continue[d] to posture threateningly" towards her afterwards, she was ultimately able to continue her observation and photography in the hallway.  *Id.*  But even if this incident was discomfiting for Nathan, there was ultimately no interference with her ability to observe the hallway outside the immigration court.  And there is also no indication that ICE's alleged actions here were motivated by retaliation

11

towards Nathan as an immigration court observer, as opposed to by the ICE agents' (mistaken) view that photography is forbidden in the hallways outside immigration court.

Plaintiffs have thus failed to overcome the defects in their claims against ICE that the Court identified when it dismissed those claims initially.

### C. The Second Amended Complaint Fails to State a Claim with Respect to Security Screenings at the Federal Buildings at Issue

Plaintiffs' building-access claims would similarly be futile. In the Second Amended Complaint, Plaintiffs allege that they "do not challenge neutral screening or clear-passage rules" but only "challenge unexplained document demands, forced separation, selective movement commands, and delays unrelated to an actual security or operational need." SAC ¶ 85. They claim that, "[a]t the outer barricades of 26 Federal Plaza, Reverend Ruiz has repeatedly observed guards demand identification, hearing notices, or other papers from respondents with scheduled court business—and deny passage when the respondents could not produce the demanded material." *Id.* ¶ 78. "Mr. Kelly separately observed a person with a scheduled hearing [be] denied entry because the person lacked identification demanded by security." *Id.* ¶ 79. "Guards . . . have issued hostile movement commands despite the volunteers' efforts to preserve pedestrian passage." *Id.* ¶ 83.

This claim would fail for several reasons. First, Plaintiffs lack standing to assert the claim because there are no well-pleaded allegations that the named Plaintiffs' own constitutional rights have been violated. "As a general prudential rule, a plaintiff may not claim standing to vindicate the constitutional or statutory rights of third parties." *Joe Hand Productions v. Conroy*, 167 F. Supp. 2d 536, 539 (N.D.N.Y. 2001) (citing *Sec. of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (plaintiffs generally must assert their own legal rights and interests)). That is precisely what Plaintiffs attempt to do here. They do not allege that they themselves were subjected to any of the challenged practices. They assert that "[v]isitors who question the asserted

12

identification policy may be required to produce additional identification or documents," SAC ¶ 53, but do not allege that that has been their experience. They claim that "visitors . . . have been denied entry for failing to satisfy an unpublished entrance requirement," *id.* ¶ 54, but again do not allege that this happened to them. They state that Rev. Ruiz "has repeatedly observed guards demand identification, hearing notices, or other papers . . . and deny passage when the respondents could not produce the demanded material." *Id.* ¶ 78. Again, they do not allege that this has occurred to any of the named Plaintiffs (or Rev. Ruiz). The same is true of their allegation that Kelly "observed a person with a scheduled hearing denied entry because the person lacked identification demanded by security." *Id.* ¶ 79.

Second, the relevant allegations are conclusory. Plaintiffs allege that security officers have demanded identification and other papers from immigration respondents, *id.* ¶¶ 78-79, separated accompaniers from respondents, *id.* ¶ 80, and issued "hostile movement commands," *id.* ¶ 83. But there are no specific allegations discussing specific incidents when this may have occurred. Plaintiffs do not identify the guards or the alleged victims, the dates or specific locations of any alleged incidents, or any other details necessary to assess the validity of their claims. Relatedly, Plaintiffs have again failed to "plead facts sufficient to permit a forum analysis as to any particular exterior location." ECF No. 62 at 63. To be sure, Plaintiffs identify certain exterior spaces. *See, e.g.*, SAC ¶ 73 ("the Broadway sidewalk between Duane and Worth Streets, the outer entrance-control barricades, the recessed approach between the barricades and the doors, and any required exterior queue or barricaded lane"). But they do not specify precisely where the alleged incidents occurred, rendering it impossible to conduct a forum analysis. And the Second Amended Complaint still fails to "identify which named plaintiff engaged in what protected activity at a

particular exterior location, which defendant restricted that activity, or what restriction was imposed." ECF No. 62 at 63.

Finally, even if Plaintiffs' allegations were true, and even if the exterior spaces at issue were traditional public fora, Plaintiffs still would not state a viable First Amendment claim. In traditional public fora, the Government may "impose content-neutral time, place and manner restrictions on speech . . . [if] those restrictions are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Hotel Employees & Restaurant Employees Union v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 545 (2d Cir. 2002). Here, the alleged restrictions on speech are content-neutral. Plaintiffs allege that guards have requested identification and other papers, *see* SAC ¶¶ 78-79, sorted visitors into different lines, *id.* ¶ 80, prevented cell phone use, *id.* ¶ 81, and directed visitors to a public building to move to particular locations, *id.* ¶ 83. But there are no allegations that any of those actions had anything to do with the fact that some of these visitors planned to observe proceedings in immigration court.

In fact, the security screening at 26 Federal Plaza and 290 Broadway applies to all visitors, regardless of the purpose of their visits. *See* August 6, 2026 Declaration of Anton Welsh ¶ 7. And the Government has a compelling interest in security screening in and around the entrances of these buildings: to ensure "the safety and security of the federal facilities and all employees and visitors within them," *id.* ¶ 12, and "prevent weapons, explosives, and dangerous items from entering the facilities," *id.* ¶ 7. Therefore, Plaintiffs' exterior-space allegations do not give rise to a viable claim.

### D. The Second Amended Complaint Fails to State a Claim with Respect to Hybrid and Virtual Immigration Court Hearings

The final element of Plaintiffs' latest pleading is a complaint regarding public access to virtual or hybrid hearings in immigration court. *Id.* ¶¶ 86-90, 97. In response to Plaintiffs' concerns in earlier filings that immigration judges at the two immigration courts at issue had inconsistent practices regarding admission of public observers to hearings that take place at least partly via Webex videoconference, EOIR's director has issued a memorandum standardizing these practices. ECF No. 83-2. That memorandum explained that EOIR "is fully committed to ensuring lawful[] public access" to immigration court hearings and confirmed that "visitors do not need permission to visit or observe an open hearing." *Id.* at 1. The memorandum then explained that when immigration judges conduct fully internet-based hearings, members of the public may join and observe those hearings (so long as they are "open") virtually, subject to bandwidth limitations of 20 virtual visitors per hearing. *Id.* at 3. However, when an immigration court hearing is taking place in a hybrid format, in which the courtroom is open and only some parties "have received court approval to appear remotely for the hearing," then members of the public may observe the hearing only in person, in the courtroom. *Id.* ("Webex visitors will not be admitted in such cases, as the hearing is scheduled and held in person.").

The Second Amended Complaint describes a non-plaintiff who periodically observes immigration court hearings by Webex, which were previously subject to public access rules that varied by judge. SAC ¶¶ 90, 97. Under the newly standardized rule, she may observe hybrid hearings only in person, which she alleges presents an inconvenience. *Id.* But (even assuming that Plaintiffs are negatively affected by this policy update, as opposed to just the non-plaintiff declarant) Plaintiffs do not explain why this change unconstitutionally infringes their alleged First Amendment right of access to immigration hearings. They (and all other members of the public)

15

may still observe all open immigration court hearings, and the Constitution does not compel courts to offer remote public access—especially when the immigration judge and at least some of the parties are in the courtroom in person. After all, federal courts allow remote public access only in the discretion of the presiding judge, only in certain types of proceedings (civil and bankruptcy cases), only in audio, and only for "non-trial proceedings that do not involve witness testimony." Admin. Off. of U.S. Courts, *Judicial Conference Revises Policy to Expand Remote Audio Access over Its Pre-COVID Policy* (Sept. 12, 2023), https://www.uscourts.gov/data-news/judiciary-news/2023/09/12/judicial-conference-revises-policy-expand-remote-audio-access-over-its-pre-covid-policy. And even this limited remote public access was allowed for the first time during the COVID-19 pandemic; before that, public access to all federal court hearings was in person only.

Plaintiffs raise no valid claim with respect to EOIR's new policy on immigration court observers.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to file their Second Amended Complaint.

16

Dated:   New York, New York
         August 7, 2026

                                      JAMES M. MCDONALD
                                      United States Attorney for the
                                      Southern District of New York

                         By:   */s/ Jean-David Barnea*
                                      JEAN-DAVID BARNEA
                                      KATHLEEN M. LEWIS
                                      ILAN STEIN
                                      Assistant United States Attorneys
                                      86 Chambers Street, 3rd Floor
                                      New York, New York 10007
                                      Telephone: (212) 637-2679/2728/2525
                                      jean-david.barnea@usdoj.gov
                                      kathleen.lewis@usdoj.gov
                                      ilan.stein@usdoj.gov
                                      *Attorneys for the Government*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules.  As measured by the word processing system used to prepare it, this memorandum contains 5,377 words.